UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE UNITED STATES OF AMERICA

              Plaintiff,

                                           Case Number: 15-CR-0019-A

      v.

GEORGINA FISHER
a/k/a Georgina Baratta

              Defendant.

_____

## **DEFENDANT'S RESPONSE TO THE GOVERNMENT'S APPEAL OF AND OBJECTIONS TO THE JUNE 29, 2015 ORDER OF THE MAGISTRATE JUDGE**

ANDREOZZI, BLUESTEIN, WEBER, BROWN, LLP
*Attorneys for Defendant*
Randall P. Andreozzi
9145 Main Street
Clarence, New York 14031
Telephone:  (716) 565-1100

## FACTS AND PROCEDURAL HISTORY

Defendant Georgina Fisher ("Ms. Fisher") respectfully submits this memorandum of law in response to the government's Appeal and Objections to the June 29, 2015 Order of the Magistrate Judge granting a pretrial hearing pursuant to *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991).

The Magistrate Judge properly found that Ms. Fisher made the required threshold showing that (1) she lacks sufficient assets, other than those restrained, with which to retain private counsel and provide for herself and her family; and (2) there is a *bona fide* reason to believe the grand jury erred in determining that the restrained assets are involved in or traceable to the offense charged in the Indictment.  Thus, the burden is on the government to demonstrate that the restrained assets are properly forfeitable at a *Monsanto* Hearing.

### A.  *The Indictment and Relevant Procedural History.*

On May 13, 2015, the government filed a Superseding Indictment (the "Indictment") charging Defendant with eight counts of violating 31 U.S.C. §§ 5324(a)(1) and (d)(1).  The Indictment also alleges forfeiture of (1) a sum of money equal to $74,000, constituting the total amount involved in the eight counts; and (2) Defendant's home located at 4640 Theresa Lane, Niagara Falls, New York. The Indictment alleges no other criminal conduct.

On February 13, 2015, defense counsel sent correspondence to the government explaining that Ms. Fisher would be applying for a home equity loan to facilitate funding her defense.  Declaration of Randall P. Andreozzi in Support of Defendant's *Monsanto* Motion ("Doc. No. 21-2") at ¶5.  The correspondence inquired as to the government's position regarding use of the equity available in the home to fund Ms. Fisher's defense.

On February 17, 2015, the government lodged in this matter via electronic case filing a Notice of *Lis Pendens* it had filed with the Niagara County Clerk, fully encumbering Ms. Fisher's home. Doc. No. 21-2 at ¶6.

On February 18, 2015, the government responded to defense counsel's February 13 inquiry, stating that the "residence is … subject to criminal forfeiture" and that the United States would "oppose any attempt" by Ms. Fisher to use equity in her home to fund her defense. Doc. No. 21-2 at ¶7.

On or about May 14, 2015, Ms. Fisher filed a motion for a *Monsanto* Hearing pursuant to *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991). Oral argument was held on June 9, 2015. Magistrate Judge Hugh B. Scott filed an Order on June 29, 2015 granting the *Monsanto* Hearing.

The government's actions to date have caused uncertainty and undue hardship on Ms. Fisher. Doc. No. 21-2 at ¶13. Ms. Fisher has insufficient financial assets to fund her defense without the ability to refinance her home. Doc. No. 21-2 at ¶14.

**B.   Ms. Fisher's assets and income.**

Ms. Fisher owns a savings account with a balance of $10,084.55 as of May 14, 2015; a checking account with a balance of approximately $474.90 as of May 14, 2015; and a 401K account with a balance of approximately $5,000. Declaration of Georgina in support of Defendant's Monsanto Motion ("Doc. No. 21-4") at ¶2. Ms. Fisher is employed as a nurse practitioner (R.N, B.S.N, M.S, A.N.P-B.C.). She earns an annual gross salary of approximately $90,000. Doc. No. 21-4 at ¶4. She has two children at home, ages 17 and 19.

Ms. Fisher owns her home located at 4640 Theresa Lane, Niagara Falls, New York.  She purchased the property for $163,000 in 2011, and currently has no mortgage on the property. Doc. No. 21-4 at ¶3.

### C.   *The Assets Allegedly Subject to Forfeiture.*

#### 1.   *$74,000 in Cash*

The Indictment seeks forfeiture of a sum of $74,000.  This is the value of the money order purchases alleged in Counts one through eight.  It is established that the government cannot restrain certain assets pretrial unless they are specifically identified as forfeitable in the indictment.  *United States v. Gotti*, 155 F.3d 144 (2d Cir. 1998).  Substitute assets may not be restrained pretrial.  *Id.*

#### 2.   *The Theresa Lane Home*

The Indictment also seeks forfeiture of Ms. Fisher's home at 4640 Theresa Lane, Niagara Falls, New York, which is valued at more than twice the $74,000 at issue.[1]  The Indictment provides no allegations explaining why this property is subject to forfeiture.  Despite this, the government lists the home as subject to forfeiture and filed a *lis pendens* on the property restraining Ms. Fisher's use of the property's value to fund her defense. (MOL at 16).

At oral argument the Government proffered, attempting to establish a traceable connection between Ms. Fisher's Theresa Lane home and the charges in the Indictment.  The proffer, however, submitted that the Theresa Lane home is traceable to events outside of the Indictment.  (June 9, 2015 Oral Argument Transcript ("Tr.") at 6-11)  The Magistrate Judge considered this proffer, rejected it, and ordered a *Monsanto* Hearing.

---

[1] Ms. Fisher purchased the home in September of 2011 for $163,000.  Zillow.com estimates its current value to be approximately $187,079.

In its memorandum of law on this appeal, the government now references only the money orders "as charged in the Superseding Indictment," and does not mention events outside the Indictment.  (MOL at 4).  The government continues, however, to demand pretrial restraint of the entire value of Theresa Lane property and not just the $74,000 charged in the Indictment.

## ARGUMENT

Pre-trial restraint of a criminal defendant's assets is constitutionally permissible when probable cause exists to establish that the defendant has committed an offense permitting forfeiture, and the assets in dispute are traceable or sufficiently related to the specified crime charged. *United States v. Monsanto*, 924 F.2d 1186 (2d Cir. 1991).  It is well established, however, that the government may not restrain untainted "substitute assets" prior to trial. *United States v. Gotti*, 155 F.3d 144, 149-50 (2d Cir. 1998).  To ensure that the defendant is not deprived of assets that are rightfully available to fund her defense in violation of the Fifth and Sixth Amendments, the defendant may be entitled to a hearing to determine whether probable cause exists establishing the involvement of the restrained property or its traceability to the crime charged in the indictment.  *United States v. Monsanto, supra*; *United States v. Fishenko*, 2014 U.S. Dist. LEXIS 136347, 3 (E.D.N.Y. Sept. 25, 2014).  "The importance of the right at issue – to fund one's criminal defense with counsel of choice – counsels in favor of a minimal barrier to contest the restraint of needed monies." *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013).

The government raises three arguments in its memorandum of law objecting to the Magistrate Judge's Order.  The government first contends that the *lis pendens* on Ms. Fisher's home is not a pre-trial restraint implicating due process and therefore an analysis under *Monsanto* is unnecessary.  The government argues next that, if the *lis pendens* is a pre-trial

restraint, Ms. Fisher has failed to satisfy the two prongs of the *Jones-Farmer* standard – (1) a challenge to the forfeiture allegation and (2) a lack of unrestrained assets sufficient to fund her defense.  We address each of these three arguments below.  In reviewing the arguments, it is significant to note that the government's reasoning (particularly in its first and second arguments), if accepted as the proper standard, would foreclose any inquiry into whether probable cause exists for the specific forfeiture, thus rendering *Monsanto* and its related precedent moot.

### I.  The Magistrate Judge correctly determined that the *lis pendens* filed on Ms. Fisher's home constitutes a pretrial restraint.

The government never actually defends its captioned premise that a *lis pendens* does not constitute a pre-trial restraint. (MOL at 13).  Instead, it argues that the *lis pendens* it placed on Ms. Fisher's home is not a *seizure* of the property and therefore does not warrant *Monsanto*-like due process protection.  According to the government, "It's the least restrictive because if the government seized [the home] and took it and sold it she wouldn't be living in it." (Tr. at 21:2-7)

But seizure is not the only action that warrants due process protection.  So, too, does a *lis pendens*.  In the *Monsanto* context, therefore, the distinction the government draws between a seizure and a *lis pendens* is one without a difference.  "[A] notice of *lis pendens*, 'especially one filed by the United States of America, practically speaking, denudes the subject property of its alienability,' thereby constituting an unauthorized restraint of property prior to conviction." *United States v. Queri*, 679 F.Supp. 2d 295, 297 (N.D. N.Y. 2010) (*citing United States v. Kramer*, 2006 U.S. Dist. LEXIS 89034, at *10 (S.D.N.Y. 2006) and *United States v. Monsanto*, 924 F.2d 1186, 1193 (2d Cir. 1991)).

The government's argument that a *lis pendens* does not merit due process protection is wrong.  The Supreme Court has held that "even the temporary or partial impairments to property

rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991).  The Second Circuit characterizes a *lis pendens* as a "similar encumbrance" that warrants due-process protection. *Diaz v. Paterson*, 547 F.3d 88, 95-96 (2d Cir. 2008).  "Though [] a *lis pendens* is not a seizure because of the other incidents of property ownership that remain unaffected, it remains a partial restraint on the alienability of property, which affects the defendant's ability to retain counsel.  That restraint could impair the Sixth Amendment in a way that warrants some due process protection.  The *Monsanto* line of cases discusses the issue in terms of pretrial *restraints* or orders restraining the transfer of property, not pretrial *seizures* of property." *United States v. Fisch*, 2013 U.S. Dist. LEXIS 152588 (S.D. Tex. Oct. 24, 2013) (emphasis in original).  Indeed, for a defendant who needs to use her assets to hire counsel of choice in a criminal defense, there is little practical difference between restraining her assets with a *lis pendens* and seizing the assets outright.  The effect of a *lis pendens* on the owner of property is "constraining" and for all practical purposes, it would be virtually impossible to sell or mortgage the property because the extent of the purchaser's or mortgagee's interests would depend on the outcome of a judicial proceeding.  *Id*. at 14-15.

The government cites not one Second Circuit case supporting the distinction it attempts to draw.  It relies on *United States v. Register,* 182 F.3d 820 (11th Cir. 1999) to support its argument that the filing of a *lis pendens* does not implicate due process rights. But in discussing *Monsanto* and *Jones*, the Court in *Register* states: "We appear to be the only circuit holding that, although pre-trial restraint of assets needed to retain counsel implicates the Due Process Clause, the trial itself satisfies this requirement."  *Id* at 835 (emphasis in original).  So, *Register does* recognize that restraint of property implicates due process.  But, using a takings claim analysis,

*Register* concludes that the trial itself satisfies the requirement.  The other circuits, including the Second Circuit, have ruled to the contrary; they apply a due process analysis as described above and do not use a takings claim analysis.  "The standards for a procedural due process claim and a takings claim are not the same." *United States v. Fisch*, 2013 U.S. Dist. LEXIS 152588, at *13; quoting *Kirby Forest Indus. v. United States*, 467 U.S. 1, 104 (1984).

The government certainly understands that it is seeking to *restrain* Ms. Fisher's use of the equity in her home pre-trial; yet it claims here that its actions are *not* a restraint.  The government is likewise aware of the established Second Circuit law on this issue and of the referenced language of the court in *Register*; yet it ignores both in its argument.  The government takes these positions for one purpose – to prevent Ms. Fisher from funding her defense.  In view of the above, the Magistrate Judge properly found that the government's actions constitute a pretrial restraint of Ms. Fisher's Theresa Lane home.

## II. The Magistrate Judge correctly determined the standard for granting a *Monsanto* Hearing.

The government argues that *United States v. Bonventre*, 720 F.3d 126 (2d Cir. 2013) is not binding precedent on the standard for a *Monsanto* hearing.  The government reasons that since the defendant in *Bonventre* failed under the first prong of the standard, the court's recitation of the standard is binding precedent only for the first prong, and is erroneous *dicta* for the second prong.

The government cites the second prong as stated in *Bonventre,* but eliminates the language immediately before and after.  The complete quote, which is directly on point and constitutes controlling law in the Second Circuit, is as follows:

> The importance of the right at issue—to fund one's criminal defense with counsel of choice—counsels in favor of a minimal barrier to contest the restraint of needed monies.  Accordingly, we hold that all a defendant need do to trigger

a *Monsanto* or *Monsanto*-like hearing is to demonstrate that he or she does not have sufficient alternative assets to fund counsel of choice. This requires more than a mere recitation; the defendant must make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice. We do not believe that the defendant must make a formal prima facie showing that the funds were illegitimately restrained, see *Jones*, 160 F.3d at 647, beyond providing a basis for bringing a motion for a *Monsanto* or *Monsanto*-like hearing in the moving papers. At the subsequent hearing, the government will bear the relatively modest burden of demonstrating probable cause to believe the assets are properly forfeitable.

*United States v Bonventre*, 720 F3d 126, 131 (2d. Cir 2013).

Indeed, *Jones* held that a defendant need only make a "prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets" are forfeitable. *Jones*, 160 F.3d at 647.

In this manner, the Second Circuit Court of Appeals confirmed that the *Jones-Farmer* test applies in determining whether a *Monsanto* Hearing is appropriate, and unmistakably identified the two elements of the standard. The analysis explains that the second prong does *not* require a defendant to "make a formal prima facie showing that the funds were illegitimately restrained [citation omitted] beyond providing a basis for bringing a motion for a *Monsanto* or *Monsanto*-like hearing in the moving papers." *Id*. Indeed, the court in *Jones* explained that, once the defendant satisfies its initial burden, "due process requires a district court to conduct an adversarial hearing at which the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense." *Jones*, 160 F.3d at 647. To suggest that this governmental burden should be imposed on the defendant just to get the *Monsanto* hearing, or to suggest that the grand jury's determination is not subject to review, would nullify *Monsanto* and *Jones-Farmer*.

The government also incorrectly claims that *Bonventre* never applied the second prong of the standard. The court did apply the second prong: "The district court alternatively refused to

hold a hearing on the ground that Bonventre failed to make a *prima facie* showing that the restrained assets were not forfeitable. As we have held above, a defendant need not make such a formal showing to trigger a *Monsanto*-like hearing." *United States v Bonventre*, 720 F3d 126, 133, n7 (2d Cir 2013).   The court, applying the second prong of the standard, held that a defendant satisfies the second prong by providing a basis in his moving papers that the restrained assets are not forfeitable.

The government cites *Kaley v. United States*, 134 S. Ct. 1090 (2014) for the premise that the grand jury's finding of probable cause as to forfeitability of assets cannot be challenged and, therefore, the second prong of *Jones-Farmer* can never be satisfied.  The assertion is false.  The referenced premise from *Kaley* applies only to the grand jury's finding of probable cause as to the defendant's guilt on the underlying offense, not as to the traceability and forfeitability of assets being restrained pre-trial by the government.   "The Supreme Court held, in *Kaley v. United States*, that a Defendant was not entitled to a pre-trial hearing on the issue of probable cause of their guilt, but is entitled to a hearing regarding the existence of probable cause relating to whether 'the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment.' " *United States v. Fishenko*, 2014 U.S. Dist. LEXIS 136347, *2-3 (E.D.N.Y. Sept. 25, 2014) (internal citations omitted).   The government is well aware of *Fishenko*, as it has cited the Eastern District of New York case in support of other arguments in this motion.  It simply ignores the language that contradicts its flawed interpretations of *Kaley* and *Bonventre.*

The government next argues that "[t]he defendant did not allege that the Theresa Lane property was not tainted; she simply stated that the Indictment did not spell out the basis for the forfeiture."  This is false.  The defendant expressly stated the basis:  the Indictment alleges that

defendant caused a financial institution to fail to maintain certain information with respect to exactly $74,000 in purchased money orders – and nothing more.   The Forfeiture Allegation, however, improperly seeks forfeiture of $74,000 *and* the defendant's home, the fair value of which is approximately $187,000.   There can be no reasonable explanation for restraining and forfeiting the difference, and the information provided by the parties at the oral argument illustrate that none of the $74,000 involved in this case is traceable to Ms. Fisher's Theresa Lane home.

It is telling that the government's argument in its supporting memorandum avoids mention of the specific amount of $74,000 alleged in the Indictment, allowing the potential for a misimpression that the Indictment involves the entire value of the Theresa Lane home. Likewise, in its footnote 7, the government mentions its proffer on traceability at oral argument, but it never explains that proffer.   The proffer includes amounts that are not involved in the offenses charged and that are not related to any criminal activity.   Indeed, the government does not associate the $74,000 at issue in this case with any crime other than the violation of a recordkeeping requirement. (Tr. 6:4-11:7).   The government suggested that it would nonetheless try to assert the additional amounts as possible "relevant conduct" if this litigation reaches a sentencing phase.   The Magistrate Judge correctly rejected these reasons for forfeiting Ms. Fisher's home and the government does not make those same arguments here.[2]

The facts are quite simple: the government indicted Ms. Fisher under Section 5324(a)(1) with respect to $74,000 in money orders, and seeks forfeiture of $74,000 *and* a house valued at more than twice that amount as property involved in or traceable to the alleged crime.   The government proffered its rationale for the forfeiture to the Magistrate Judge, and he properly and

---

[2] Presumably, the government used that same flawed rationale with the grand jury, causing the panel to improperly include the forfeiture count in the indictment.   The defendant, in correspondence dated June 19, 2015, asked the government whether this occurred and the government refused to answer the question.

lawfully rejected it.  The government now appeals the determination, asking this court to rule that the grand jury's determination should not be questioned despite the government's failed explanation.

Contrary to the government's assertion, the Magistrate Judge properly and carefully considered the defendant's basis for its assertion that it meets the second prong of the test for a *Monsanto* hearing, allowed oral arguments on the issue, and considered the government's proffer on the issue.   The Magistrate Judge asked if the parties wished to supplement the record.  Defendant submitted additional information on June 16, 2015.   The government submitted nothing.   The Magistrate Judge addressed these items in his Order, and rendered an informed decision based on consideration and analysis of the entire record.    Ms. Fisher has provided a basis for bringing the *Monsanto* motion in her moving papers and at oral argument in satisfaction of the second pong of *Jones-Farmer*, clarified in *Bonventre* -- the controlling law in the Second Circuit.  She is, therefore, entitled to a *Monsanto* Hearing.

### III. The Magistrate Judge properly found that the defendant satisfied the required showing that she did not have sufficient alternative assets to fund counsel of her choice.

In section III of its argument, the government embraces *Bonventre*, arguing that the Magistrate Judge failed to properly consider the defendant's financial information.

Under the first prong of the *Jones-Farmer* test, a defendant must demonstrate that she has insufficient alternative assets to fund counsel of her choice.  *United States v. Bonventre, 720 F.3d 126* (2d Cir. 2013).  The discretion is with the Court in determining whether the defendant has made such a showing.   *United States v. Jones*, 160 F.3d 641, 648 (10th Cir. 1998).  Magistrate Judge Scott determined that Ms. Fisher has met her burden to warrant a *Monsanto* hearing and his decision was not clearly erroneous.

**A. The government suggests that Ms. Fisher's finances compare to Mr. Bonventre's.**

The government contends that Ms. Fisher's financial circumstances are comparable to or better than Mr. Bonventre because he was unemployed and receiving a small Social Security benefit while Ms. Fisher is gainfully employed as a nurse with a salary of $90,000 per year. The government highlights that while Mr. Bonventre netted $100,000 from the sale of a house, Ms. Fisher netted $84,000. The government represents to this Court that "[this] simple comparison of the financial allegations made by the defendant and those made (and found insufficient) in *Bonventre*, required a finding that the defendant had failed to meet her burden of demonstrating financial need." (MOL at 18).

Daniel Bonventre, however, is not an impoverished, unemployed man living on Social Security benefits. He is a wealthy investment advisor whose vast financial holdings include an array of bank accounts, cash, bonds, real property, jewelry, artwork, and other assets – both restrained and unrestrained – of millions of dollars. Daniel Bonventre was one of the principal culprits in the massive Bernie Madoff Ponzi scheme. As Director of Operations for Madoff, Mr. Bonventre was charged with conspiracy, securities fraud, falsifying records of a broker-dealer, falsifying records of an investment advisor, making false statements with the SEC, mail fraud, bank fraud, tax fraud conspiracy, subscribing to false individual tax returns and tax evasion. Specifically, Mr. Bonventre was charged with creating false and misleading Profit and Loss statements that concealed Madoff Investment Advisory business; creating false trading account reports; preparing a misleading list of Madoff bank accounts for the SEC; receiving $1.8 million from false and fraudulent trades in his Madoff Investment Advisory account; receiving off-the-books payments of more than $1 million for payment of personal expenses, including $195,000 for tuition for his son, $315,000 maintenance payments on his luxury apartment, $227,000 in

country club dues, and $500,000 in American Express card charges.  *United States of America v. Daniel Bonventre, Annette Bongiorno, Joanne Crupi a/k/a "Jodi," Jerome O'Hara, and George Perez*; U.S. District Court Southern District of New York, S8 10 Cr. 228 (LTS), Superseding Indictment, October 1, 2012. The government seized and sought forfeiture of money he swindled from people as part of the scheme.  His unrestrained holdings included other accounts with an unspecified aggregate value that were sufficient to provide for payment of annual expenses of some $197,000.  Mr. Bonventre failed to explain the specific source of the cash flow that would generate income sufficient to meet his annual expenses.  In light of these unexplained accounts and income sources, and considering Mr. Bonventre's aptitude for misleading people through the use of false trading accounts and other off-balance sheet subterfuges, the District Court found, and the Court of Appeals affirmed, that he failed to demonstrate financial need for the restrained assets to fund his defense.  Mr. Bonventre was convicted on all counts in March of 2014 and, on December 8, 2014, the court ordered him and the other defendants to forfeit $155 billion.

The government mocks Ms. Fisher – a nurse raising two children in Niagara Falls – and compares her to Daniel Bonventre – a principal figure in the most expansive financial fraud scheme in the history of the United States.  The government accuses her of lying when she explains that she used the net proceeds for the sale of her home to pay a debt to her mother and to fund expenses while she was unemployed.  But, despite issuing subpoenas to her bank and an apparent five-plus year investigation, the government offers nothing to support its vague accusations.

The government complains that the Magistrate Judge accepted Ms. Fisher's facts and representations "at face value" in granting the *Monsanto* hearing.  But it could offer no information to the Magistrate Judge that would disprove the facts and representations presented

Contrary to the government's contentions, Ms. Fisher did explain her net worth, list her assets, and explain how she provides for her family and pays her living expenses. The government misrepresented to the Magistrate Judge that Ms. Fisher received and currently possesses $123,000 from the sale of her Ashwood Drive home for use to pay her lawyers. Ms. Fisher corrected the misrepresentation with the closing statement for the transaction from three years ago (which she had already provided to the government) showing only $84,000 in proceeds, and by establishing that she used much of the money to repay debt and fund her family's expenses.

Likewise, in its memorandum, the government claims that Ms. Fisher failed to reference an income tax refund she received. The government overlooks the fact that Ms. Fisher did include the refund in her declaration of June 16, 2015 (Doc. No. 35-1 at ¶10) and provided account statements documenting that the refund is included in the $10,000 she has available in her account. The government offered nothing more at the hearing to rebut the facts presented by Ms. Fisher, but persists in asking this Court to find that she is lying.

Relentless in its efforts to avoid a *Monsanto* hearing, the government presents the following "questionable" purchases for a person "who claims to be without sufficient funds to pay her attorney": JetBlue airline tickets totaling $1,125.60, a $304.00 ATM withdrawal, and $343.00 ticket purchase.

Had the government investigated or inquired about the JetBlue purchase, it would have learned that the tickets were for travel to a nursing conference Ms. Fisher attended in New Orleans. Ms. Fisher's costs were funded by her employer, as reflected in a $1,500.00 deposit to her account twenty days after the purchase. Ms. Fisher's husband and mother accompanied her on the trip and reimbursed her for their portions of the travel. Certainly traveling on a work trip

for which she was compensated is not questionable activity that would suggest Ms. Fisher, like Mr. Bonventre, is depleting assets that she could use to fund her defense.

In light of the above, the government cannot truly believe that Ms. Fisher is in the same financial position as multi-millionaire Daniel Bonventre. Yet the government makes this argument hoping that it may prevent Ms. Fisher from funding her defense.

**B.   The Magistrate Judge properly considered the fact that Ms. Fisher's costs of defending herself exceed the value of her unrestrained assets, and that Ms. Fisher's mother and husband would not fund her defense.**

The government contends that the Court erred because it never specifically asked whether the $10,000 in Ms. Fisher's account and her disposable income after taxes and living expenses will adequately fund her defense.  The government suggests that Ms. Fisher is lying when she represents to the Court that these funds are insufficient to fund her defense in this matter.

Ms. Fisher is under federal indictment and faces, as the AUSA stated on the record, years in prison on the charges presented.  The charges and forfeiture allegations in the Indictment are complex.  The government itself spent five-plus years investigating this case and has already devoted substantial resources in this litigation.   The AUSA handling the matter for the government needed to bring in counsel who specialized in forfeiture matters to assist in this hearing and in the related forfeiture matters.   Ms. Fisher's legal fees to defend these complex charges will be substantial; they will exceed the $10,000 in Ms. Fisher's bank account and her income in excess of her living expenses and taxes.  She must take loans to fund her defense, and the government has expressly refused to allow her to use her home as collateral for such a loan.

The government also suggests that Ms. Fisher is lying when she submits that her mother and newly-wedded husband are not in positions to assist in funding her defense.   The

government states that since Ms. Fisher's mother "gave" her $21,000 to purchase her Theresa Lane home, she should give her money to fund her defense.  (MOL at 20).  But the government knows full well that the amount was a loan – not a gift – that Ms. Fisher repaid with the proceeds of the sale of the Ashwood residence.

The record in this case is now replete with such misrepresentations and with unfounded and unsubstantiated assertions that Ms. Fisher is lying.  Unfortunately, the government's biased skepticism and its mockery of Ms. Fisher, without more, cannot carry the day.  Magistrate Judge Scott, based on careful consideration of the documents, facts, and representations presented, ruled that Ms. Fisher is entitled to a *Monsanto* hearing.  The Magistrate Judge gave both parties the opportunity to supplement the record as they deemed appropriate.  The government provided nothing to support its general disparagement of Ms. Fisher.  Yet it continues in that same vein to this day – in a desperate attempt to avoid a *Monsanto* hearing.

For the reasons set forth above, Magistrate Judge Scott did not err in determining that Ms. Fisher lacked sufficient unrestrained assets with which to fund her defense.

## **CONCLUSION**

For all the reasons above, Defendant respectfully submits that the Magistrate Judge's Order is correct and requests that the Court affirm and adopt the Order in all respects.

Dated: July 22, 2015

> ANDREOZZI, BLUESTEIN, WEBER, BROWN, LLP
> *Attorneys for Defendant*
>
> By:  _/s/ Randall P. Andreozzi_____
> Randall P. Andreozzi, Esq.
> 9145 Main Street
> Clarence, New York 14031
> (716) 565-1100
> rpa@andreozzibluestein.com