IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

               v.                                15-CR-19-A (HBS)

GEORGINA FISHER,
a/k/a Georgina Baratta,

                      Defendant.
_____

## THE GOVERNMENT'S REPLY IN SUPPORT OF ITS APPEAL OF AND OBJECTIONS TO THE JUNE 29, 2015 ORDER OF THE MAGISTRATE JUDGE

On July 22, 2015, the defendant filed a Response to the Government's Appeal of and Objections to the June 29, 2016 Order of the Magistrate Judge.  Docket No. 45.  The defendant asserts that: (1) a lis pendens is a restraint that triggers a Monsanto inquiry; (2) the Magistrate Judge considered the second prong of the Jones-Farmer test regarding probable cause for the forfeiture, and did so properly; and (3) the defendant satisfied her burden, and the Magistrate Judge properly found, that she did not have sufficient alternative assets to fund counsel of choice.   Id.

## ARGUMENT

**I.**    **The Factual and Legal Relevance of the Theresa Lane Lis Pendens.**

    A.   The filing of the lis pendens evinces no improper motive on the part of the government.

The defendant questions the government's motive and intent in filing the lis pendens, suggesting that the lis pendens was not filed until after defense counsel inquired about applying for a home equity loan on the property.  See Docket No. 45, at 2-3, 8 ("The

government takes these positions for one purpose- to prevent Ms. Fisher from funding her

defense."). This is not the case. Defense counsel's letter inquiring about the property was

dated February 13, 2015, the day <u>after</u> the lis pendens was filed in Niagara County. The

February 17, 2015 date repeatedly referenced by the defendant is not relevant—it is simply

the date the lis pendens was made part of the record in this case. <u>See</u> Docket No. 7.


The defendant also misstates what the government said in its February 18, 2015 letter,

claiming that the government said it "would `oppose any attempt' by Ms. Fisher <u>to use equity</u>

<u>in her home to fund her defense</u>." <u>See</u> Docket No. 45, at 3 (emphasis added). That is not

what the government said; the government simply told defense counsel that, because of the lis

pendens, it would "oppose any attempt by your client to encumber the property." <u>See</u>

Docket No. 21-2, Exhibit B.

B. <u>Theresa Lane is subject to forfeiture as property "involved in" or "traceable to"</u>
<u>the charged offenses; not as "substitute assets"</u>.

The defendant also fails to take into consideration the difference between property

that is restrained as "substitute assets", as opposed to property that is restrained because it is

"involved in" or "traceable to" the charged offense. The Theresa Lane property is not a

"substitute asset" as that term is defined in Title 18, United States Code, Section 853(p). It is

an asset "involved in" or "traceable to" the charged offenses in that its purchase is linked to

the money orders involved in the offenses charged in the Superseding Indictment. The cases

relied on by the defendant for the proposition that a lis pendens is an "unauthorized restraint

of property prior to conviction" are substitute asset cases. <u>See</u> Docket No. 45, at 6 (citing

United States v. Queri, 679 F. Supp. 2d 295, 297 (N.D.N.Y 2010); United States v. Kramer, 2006 U.S. Dist. LEXIS 89034, at *10 (S.D.N.Y. 2006)).   As such, they have no bearing on this case.

C. The Magistrate Judge made no finding that a lis pendens is a restraint that triggers Monsanto considerations.

Finally, the defendant states that the Magistrate Judge "properly found" that the lis pendens constituted a pretrial restraint.   See Docket No. 45, at 6.   In fact, the Magistrate Judge made no such finding.   Indeed, the government's contention is that the Magistrate Judge erred because he "fail[ed] to address this preliminary inquiry, taking instead, as an established finding, that the lis pendens constituted a restraint for purposes of Monsanto." See Government's Appeal, Docket No. 43, at 14.

II.     The Propriety of the Monsanto Analysis Utilized by the Magistrate Judge.

There is no dispute that there are two considerations which impact a defendant's right to a Monsanto hearing.   The first is whether the defendant has established that he does not have access to "sufficient alternative assets to fund counsel of choice."   If the defendant does not satisfy his burden on this issue, there is no reason to proceed to the second consideration. If, however, the Court finds that the defendant has satisfied his showing of financial need, it must next address the second consideration.   The second consideration requires the defendant to make a showing regarding the grand jury's finding of probable cause for the forfeiture charged in the Indictment.   Again, this analysis need not be undertaken if the defendant fails to establish a lack of sufficient alternative assets to fund his defense.

The government's arguments on appeal from the Magistrate Judge's Order are twofold:  (1) that the Magistrate Judge clearly erred in finding that the defendant had established a lack of access to sufficient alternative assets to fund her defense; and (2) that even if the Magistrate Judge was correct relative to this first consideration, he failed to consider whether the defendant had satisfied her burden relative to the grand jury's probable cause determination.

A. The Magistrate Judge clearly erred in finding that the defendant had established a lack of access to sufficient alternative assets to fund her defense.

As set forth in the government's Appeal, the Magistrate Judge erred in accepting the defendant's self-serving Declarations as to her inability to fund counsel of choice, and failed to consider the Bonventre Court's determination as to what financial information the defendant should have provided.  See Appeal, Docket No 43, at 17-22.  The government addressed the types of information the Bonventre case found to be determinative and pointed out how the defendant had failed to provide such information.  The government also analyzed the information the defendant had provided and pointed out that such information failed to paint a picture of a defendant who, without access to the Theresa Lane property, would be unable to pay for her defense.   Id.

In her Response, the defendant focuses her argument on allegations that the government has "mocked" her, and has repeatedly accused her of "lying".   Docket No. 45, at 14-17.  Rather than focusing on the issue at hand, which is whether she has satisfied her burden of showing financial need, the defendant prefers to accuse the government of

"unfounded and unsubstantiated assertions that Ms. Fisher is lying" and "general disparagement of Ms. Fisher" all in a "desperate attempt to avoid a <u>Monsanto</u> hearing."   <u>Id</u>. at 17.   Such assertions do not warrant a response other than to point out that a review of the government's Appeal will fail to uncover a single use of the word "lying" or any of its variations.

The government's position is that the defendant's claims regarding the unavailability of sufficient alternative assets are conclusory, unsupported by the evidence presented, and incomplete.   Nothing stated or argued by the defendant in her Response shows otherwise.

The defendant seems not to understand that it is she who has the burden of proof on this issue.   It is not the government's burden to "disprove the facts and representations presented," (Docket No. 45 at 14), or to "investgate[ ] or inquire[ ] about" certain specific purchases listed on her bank statements. <u>Id</u>. at 15.   The defendant takes issue with the government's questioning of several purchases, and goes into great detail about how one specific purchase- JetBlue tickets- was legitimate because the flights were for a work conference. <u>Id</u>. at 15-16.   Interestingly, the defendant offers no explanation as to the other expenditures pointed out by the government – a $304 ATM withdrawal from the Seneca Niagara Falls Casino, and $343 in unspecified tickets.   Such silence is telling.

The defendant also goes into great detail explaining how she is different from the defendant in <u>Bonventre</u>, and why, therefore, the Court should not rely on the Second

Circuit's findings relative to whether Bonventre had satisfied his burden of showing the unavailability of sufficient alterative funds to fund his defense.   Docket No. 45, at 13-14 (detailing how Bonventre was "one of the principal culprits in the massive Bernie Madoff Ponzi scheme").   The government does not claim that the defendant is similar to Bonventre either in terms of the crimes charged or in terms of their respective pre-indictment lifestyles. A claim of insufficient alternative assets to fund one's legal defense levels the playing field. The only issue is whether, post-restraint, a defendant has sufficient assets available to him to pay his legal fees.   In Bonventre, the Second Circuit agreed with the District Court that even where the defendant submitted affidavits in which he stated that he was unemployed and had no real assets, he had not satisfied his burden of establishing the unavailability of sufficient alternative funds.   720 F.3d 126, 132-33 (2d Cir. 2013).

In terms of the government's assertion that the defendant failed to make any showing as to her past, present or future legal fees, and that the Magistrate Judge erred in failing to consider this, (Docket No. 43, at 21-22), defense counsel summarily states as follows:

> Ms. Fisher's legal fees to defend these complex charges will be substantial; they will exceed the $10,000 in Ms. Fisher's bank account and her income in excess of living expenses and taxes.   She must take loans to fund her defense, and the government has expressly refused to allow her to use her home as collateral for such a loan.

Docket No. 45, at 16.   The bottom line, however, is that the Magistrate Judge should have considered the nature of defendant's legal expenses, and his failure to do so is clear error. See Bonventre, 720 F.3d at 133 (noting defense counsel's estimated cost of criminal defense). Defendant's statements regarding the cost of her defense should not be considered by this Court because they were not made to the Magistrate Judge.   Moreover, contrary to

defendant's assertion, the case against her is not complex.  <u>See</u> Docket No. 45, at 16.   The charges against the defendant are straightforward, as is the proof.   The Superseding Indictment alleges a pattern of conduct by the defendant over the course of a finite period of time.   Nor does this case's procedural history reflect any complexity.   The number of years a case is pending prior to being charged has no direct correlation to its complexity; the intensity with which it is investigated; or the amount of resources that have been devoted to it.

In the end, the defendant's attacks on the government cannot deflect attention from the fact that there was a vacuum of information regarding the defendant's alleged lack of access to sufficient alternative assets to fund her legal defense such that the Magistrate Judge's finding that the defendant had satisfied her burden in this regard was clearly erroneous. Having failed to satisfy her burden as to this first required showing, the Court need not consider whether the defendant made a sufficient showing regarding the grand jury determination relative to forfeiture.

B. <u>The Magistrate Judge failed to consider whether the defendant had satisfied her burden relative to the grand jury's probable cause determination</u>.

Although the Magistrate Judge concluded that the defendant had established a lack of access to sufficient alternative assets, he failed to address the second required showing, namely, that the defendant made some showing relative to the grand jury erring in its determination that there was probable cause for the forfeiture.   <u>See</u> Docket No. 43, at 5, 15. Even assuming the applicability of the <u>Bonventre</u> Court's analysis of the second prong as

requiring the defendant to provide only "a basis for bringing the motion,"[1] the Magistrate

Judge failed to make any finding that the defendant had set forth a basis for bringing the

motion, or, if so, what such basis was.   In the absence of such a finding, the granting of the

Monsanto hearing was clearly erroneous and contrary to law.


The defendant is incorrect when she asserts that the Magistrate Judge rejected the

government's proffer relative to probable cause.   See Docket No.45, at 4, 11-12.   While the

Magistrate Judge summarized the government's proffer in his Order, (Docket No. 37, at 2),

he made no finding as to its sufficiency or as to its relevance to his decision.   As set forth

above, the Magistrate Judge made no findings at all as to the second prong of the

Jones-Farmer test.   Nor did the defendant satisfy her showing relative to this second prong.

In her Response, the defendant apparently contends that she established that the grand jury

erred in its forfeiture determination because the government cannot seek forfeiture of both

$74,000 and the Theresa Lane property.   See Docket No. 45, at 10-12.


The defendant misapprehends the reach of the forfeiture laws.   Title 31, United States

Code, Section 5317(c) authorizes both civil and criminal forfeiture of all "property involved

in" any violation of, or any conspiracy to violate, any of the currency reporting requirements

set forth in the Bank Secrecy Act, which is codified at Chapter 53 of Title 31.   Under the

Bank Secrecy Act, banks and other financial institutions are subject to certain record-keeping

---

[1]   The government contends that the proper showing is that the defendant must make a "prima facie showing
that the funds were illegitimately restrained," and that the Second Circuit's holding to the contrary in Bonventre
is dicta and contrary to the Supreme Court's holding in United States v. Kaley, 134 S. Ct. 1090 (2014).   Docket
No. 43, at 10-11; 14-15.

and reporting requirements with respect to transactions involving more than $3,000 in bank checks, travelers' checks, or money orders.   Section 5317(c) states that "[t]he court in imposing sentence for any violation of 5324 of this title … shall order the person to forfeit all property, real or personal, <u>involved in the offense</u> <u>and</u> <u>any property traceable thereto</u>." (emphasis added).   Forfeitures under Section 5317(c) are not limited to the unreported or structured funds.   To the contrary, forfeitures for Bank Secrecy Act violations are just as broad as forfeitures for the money laundering offenses in Title 18.   See <u>United States v.</u> <u>Seher</u>, 562 F. 3rd 1344 (11th Cir. 2009) (the scope of the forfeiture authority in Section 5317(c) is the same as it is for Title 18 offenses under 18 U.S.C. Section 982(a)(1); thus the authority to forfeit all property involved in a currency reporting offense means that the government may forfeit not only the unreported currency but any property used to facilitate that offense).

A plain reading of Section 5317(c) makes clear that, upon the defendant's conviction, the government will be entitled to forfeit $74,000 <u>and</u> the Theresa Lane property as property "involved in the offense" or "traceable to the offense."   Section 5317(c) reads in the conjunctive.   The government does not have to choose between the currency and the property.   As long as it can establish that these items were involved in or traceable to the offenses charged, it can forfeit them.   Nor is it dispositive that the value of Theresa Lane is greater than the total amount of money orders charged in the Superseding Indictment.   <u>See</u> Docket No. 45, at 11.   As the government proffered before the Magistrate Judge, Theresa Lane was purchased with funds traceable to the offenses charged.   As such, it is subject to forfeiture, regardless of its current value.   <u>See</u> <u>United States v. Nicolo</u>, 597 F. Supp. 2d 342,

355 (W.D.N.Y. 2009) (if funds in commingled bank accounts are subject to forfeiture as property involved in offense charged, then vehicle purchased with the commingled funds is forfeitable as property traceable to such funds); United States v. Schlesinger, 396 F. Supp. 2d 267, 272 (E.D.N.Y. 2005) (if defendant's real property is forfeitable as property involved in offenses charged, it follows that the proceeds of the sale of such property is also forfeitable).

## CONCLUSION

For the reasons set forth above, as well as in the government's Appeal, the government respectfully requests that this Court reverse the June 29, 2015 Order of Magistrate Judge Scott and deny the defendant's motion for a Monsanto hearing.

DATED:   Buffalo, New York, July 27, 2015

WILLIAM J. HOCHUL, JR.
United States Attorney

BY:   /s/   MARYELLEN KRESSE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5888
MaryEllen.Kresse@usdoj.gov

/s/   MARY CLARE KANE
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5809
Mary.Kane@usdoj.gov

10